IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,        :

        Plaintiff,        :

    -vs-        :        CASE NO. CR2-14-127(4)

TYSIN L. GORDON,        :        JUDGE MARBLEY

        Defendant.        :

SENTENCING MEMORANDUM

I.    Introduction:

Tysin Gordon's sentencing is scheduled for June 29, 2016, at 9:30 a.m., before This Honorable Court. Briefly, Mr. Gordon has plead guilty to one Count of Racketeering Conspiracy, under 18 U.S.C. § 1962(d).  The Final Presentence Investigation Report has been filed and there are currently two objections pending. This Sentencing Memorandum sequentially will include (1) an adjustment request under § 5K2.23, then the stated reasons for Objections No. 1 and 2, followed by the 3553(a) Factors.

At the Sentencing Hearing, Mr. Gordon has personally prepared a statement to be given as allocution before This Honorable Court.  Mr. Gordon is requesting the Court sentence with a final BOL of 24, and Crim. Hist. IV (77-96 months).

II.     U.S.S.G. § 5K2.23 – Adjustment:

The Final Presentence Report in Part B, Criminal History, notes on 5/26/2010, Tysin Gordon received a sentence of one year incarceration, from a State case in Columbiana County Court of Common Pleas, East Liverpool.  (PSR at ¶ 141).  It is respectfully asserted that in his sentence of June 29th,  Mr. Gordon receive an adjustment of one year, because of § 5K2.23:  Under this Section, it notes a downward departure may be appropriate if a Defendant has completed serving a term of imprisonment.  If that term of imprisonment resulted from the State offense that is relevant conduct to the instant offense, This Honorable Court has authority, under the particular Guideline, to adjust the sentence with the one year already served.

Specifically, in the Statement of Facts that was read at Mr. Gordon's Change of Plea Hearing, it notes he was found with "digital scales, baggies with cocaine residue, and $1,129 in cash on May 26, 2010." (SOF, Change of Plea Hearing, 1/15/2016). Additionally, the Final Presentence Report, specifically includes this relevant conduct citing, again, the May 26, 2010 situation.  (PSR at ¶ 59).  Finally, in the discovery provided by the U.S. Attorney, part of the Incident Report authored by the East Liverpool Police Department verifies the above.

The Sixth Circuit, through many cases, has specifically addressed the authority to permit this type adjustment.

An example, is United States v. Jones, 445 F.3d 865 (6th Cir. 2006):

> "Jones argues that the trial court erred in failing to give him a below-Guidelines sentence under U.S.S.G. § 5K2.23 because of the one year he had already served in state prison for the same conduct.

-2-

\* \* \*

Section 5K2.23 provides as follows:

> A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (6) of § 5G1.3 (Imposition of a Sentence on a Defendant Subject to Undischarged Term of Imprisonment) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.", (Jones at 867-68).

In summary, there is little question the one year served in an Ohio Correctional Facility by Mr. Gordon is clearly related to the instant RICO offense. The Statement of Facts, the Presentence Report, and the discovery provided by the U.S. Attorney, substantiates this: it is respectfully requested the sentence include the one year adjustment.


III.    Objection No. 1: Criminal History § 4A1.3 [Request for Departure]

Tysin Gordon specifically objected in the PSR regarding his Criminal History points under the Juvenile Adjudication Section in Paragraphs 127, 128, and 129. A departure is also requested to parallel this objection.

Importantly, Paragraph 126 correctly credits Mr. Gordon's first appearance in Juvenile Court, i.e., November 5, 2000. He was adjudicated delinquent and ordered to DYS, the Department of Youth Services. This was suspended. A series of violations followed which are the cornerstone of this objection. In the following Paragraphs 127,

128, and 129, all are violations of the <u>initial adjudication</u>, and incorrectly total four points against Mr. Gordon.

The four points are incorrect since they all <u>relate back</u> to the first adjudication, again, noted on November 5, 2000.

He was eventually sent to DYS, pursuant to the violations, when the sentence was actually <u>imposed</u>. In a nutshell, there was only one sentence from DYS and, as a result, only the initial two points are properly credited to his Criminal History.

At the conclusion of his Criminal History, the final reflects a computation of a Criminal History score 12. With the four improper points subtracted from the 12, his Criminal History should be eight, which results in Category IV.

It also should be noted here that in Part F of the PSR, Factors that may Warrant a Sentence outside of the Advisory Guideline System, the Report notes:

> "Mr. Gordon's criminal history began at the age of 15 and he was adjudicated of five different charges. <u>Most of these adjudications occurred at the age of 15</u> * * *.", (PSR at ¶ 186). [Emphasis supplied].

There are numerous cases throughout the Sixth Circuits and District Courts in the Sixth Circuit that substantiate a departure when it is clear there is an over-representation of the individual's Criminal History.

In <u>United States v. Williams</u>, 432 F.3d 621 (6th Cir. 2005), the Court used as a basis of the Sentencing Courts departure the Guideline § 4A1.3:

> "* * * The district court expressly relied upon two policy statements issued by the Sentencing Commission. *See* USSG §§ 4A1.3 (authorizing a downward departure '[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the serious-

ness of the defendant's criminal history or the likelihood that the defendant will commit other crimes').", (<u>Williams</u> at 623).

In <u>United States v. Mapp</u>,  2007 WL 485513 (E.D. Mich., S.D.), the Sentencing Court departed downward under the particular Guideline when many of the significant convictions occurred when the Defendant was between 17 and 19 years old:

> "Here, the Court agrees that Defendant's criminal history category overstates the seriousness of his criminal history. Defendant was 30 years old at the time of this offense (in May 2005).  He has not been convicted since 1994. All of his convictions occurred during a two year window when he was in his late teens, and they each involved relatively small amounts of narcotics.",  (<u>Mapp</u> at  *3).

In comparison, as this Court is well aware, the juvenile adjudications in this case occurred when Tysin Gordon was 15 years old.  Mr. Gordon will be 31 in a matter of days at the time of his sentence.

Finally, there is an excellent case from the United States District Court of Wisconsin which details factors to be used in a departure.  In <u>United States v. Hammond</u>, 240 F.Supp.2d 872 (E.D. Wisc. 2003), the Court used primarily the age of the prior convictions in relation to the present offense, and importantly the Defendant's age at the time of the prior convictions, <u>Hammond</u> at 877.

It is, thus, respectfully requested that this objection be sustained for the above reasons, and Mr. Gordon's Criminal History be categorized at IV.

IV.    Objection No. 2:  <u>Specific Offense Characteristics:</u> [Combined Offense Level]

This objection is divided into three parts.  All three parts relate to the Combined Offense Level Grouping found beginning at Paragraph 81 and going all the way through Paragraph 117 of the Presentence Report.   (PSR at  ¶¶ 81-117).

The Report improperly enhanced the Base Offense Level using specific offense characteristics in Paragraphs 83, 98, and 112.  Without these specific enhancements no points would be added to the multiple count adjustments found in ¶ 117, and Mr. Gordon's BOL would be 27 (-3 for acceptance), thus a 24.

The principal basis for this part of the objection involves the Plea Agreement itself, where in Paragraph 7 it states that:

> "For sentencing purposes, it is agreed by the parties, that
> with respect to the Superseding Indictment:
>
> (1)  that pursuant to U.S.S.G. 2G2.1, the applicable offense
> offense level is twenty seven (27), the parties also agree
> that no specific offense characteristics apply." (Plea Agree-
> ment at  ¶ 7).

It is understood that the U.S. Attorney has responded to this objection by stating the specific offense characteristics only apply to the Overt Act originally assigned to Mr. Gordon, which, again, began and ended with Base Offense Level 27.

In response to this, it is noted that the age old rule of statutory construction applies in criminal cases, i.e., where the issue is ambiguous, the ambiguity should always fall in favor of the Defendant.  It is, thus, requested that this part of the objection be sustained and the combined offense level remain at 27, as enunciated in the Plea Agreement.

The second part of this objection deals with how one actually computes the combined offense level grouping. As noted throughout this case and in his Change of Plea Hearing, and also in this Sentencing Memorandum, it needs to be emphasized again that Mr. Gordon pled guilty to one Count of Racketeering Conspiracy. [There were 37 other counts in the Superseding Indictment and Mr. Gordon was not named in any. PSR at ¶ 5-38].

The Presentence Report improperly uses the underlying activity resulting in the conviction as a basis to improperly group and, thus, enhance the Base Offense Level.

The grouping application is found beginning in § 3D1.1 of the Guidelines in which the heading states "Procedure for Determining Offense Level on Multiple Counts." The Guidelines then go into graphic detail as to how to apply multiple counts, to determine whether they are actually grouped or not.

Quite clearly, under § 3D1.1(a), it states: When a Defendant has been convicted of more than one count, the Court shall: (1) Group the counts resulting in conviction into distinct Groups of Closely Related Counts ("Groups") by applying the rules specified in § 3D1.

As noted, throughout the entire section dealing with multiple counts, the reference is crystal clear that the application involves specifically counts, and not portions of a Racketeering Conspiracy that unconstitutionally enhance Mr. Gordon's sentence.

The Presentence Report, perhaps, says it best in its initial description of the difference groups. In Paragraphs 68 through 73, in every group the Presentence Report

states that the alleged enhancement is "a pseudo count."  In looking up the definition of "pseudo," it means not genuine.

This counsel fully recognizes that in previous Decisions and Orders of This Court, it is recognized the use of "Overt Acts" as an <u>evidentiary basis</u> to ultimately convict.  In actuality, these previous Orders and Opinions actually support the objection, here, because without these Overt Acts, the RICO Conspiracy would not result in a conviction, i.e., the necessity of establishing both a conspiracy and the <u>pattern</u> of Racketeering activity.

There is no question that these Acts are necessary for the factual basis when Mr. Gordon changed his plea back in January, but they simply are not counts and, as a result, there is no basis to enhance the Base Offense Level from the original agreed upon 27.

In conclusion, with respect to this issue, it should be noted that other Co-Defendants in the Indictment where charged with other counts.  Any grouping that may occur under the Section noted above, applies to those Co-Defendants with multiple counts.  In Tysin Gordon's case, he was charged and pled guilty to one Count of Racketeering Conspiracy.

The third part of this objection involves the actual application of Grouping Closely Related Counts.  In  § 3D1.2(b) it states:  Groups of Closely Related Counts, All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same meaning of this rule:  (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

All of the Overt Acts in Mr. Gordon's case involve substantially the same harm, since they were connected by common criminal objective, or constituted a criminal scheme or plan.

By simply reading the Indictment, it states how the enterprise was supported by a pattern or series of acts connected.  These Overt Acts supported the enterprise and resulted in, again, the Change of Plea Hearing resulting in this RICO conviction.

This counsel is aware of an 11th Circuit case which details how to compute the combined offense level and, frankly, does state that predicate acts can be used in the grouping.

However, in the case, <u>United States v. Nguyen</u>, 255 F.3d 1335 (11th Cir. 2001), the decision states:

> "The grouping rules are designed to 'prevent multiple punishment for substantially identical offense conduct' by placing multiple counts that are closely related into groups.[1] * * * Where the grouped counts were connected by a common objective or were part of common scheme or plan, each group is then assigned an offense level that is equal to the offense level of the most serious count in the group." , (<u>Nguyen</u> at 1338).

In Mr. Gordon's situation, all related to a common objective over part of a common scheme or plan.

It is respectfully asserted that because of  the above, the combined offense level should be the 27 that was originally agreed upon in the Plea Agreement.

---

[1] The Guidelines require that "counts involving substantially the same harm' be grouped together. United States Sentencing Commission, *Guidelines Manual*, § 3D1.2 (Nov. 1997).

V.       § 3553(a) Factors

Beginning with the nature and circumstances of the offense and the history and characteristics of the Defendant, there is a recent case from the Northern District of Ohio that accurately reflects why Mr. Gordon's base  level should be at 27, again, what was contracted in his Plea Agreement.

In United States v. Campbell, 567 Fed.Appx. 422 (6th Cir. 2014), the case:

> "targeted the alleged racketeering activity of a Youngstown, Ohio, street gang known as LSP.  It charged twenty-three defendants in forty-two counts.  Campbell was charged only in count one, the RICO conspiracy charge, which alleged that he conspired with members and associates of LSP to commit racketeering offenses.", (Campbell at 423).

> "To prove Campbell's participation in the RICO conspiracy, the government had to show that Campbell 'agreed that either he or someone else would commit at least two RICO predicate acts.' *United States v. Larson*, 535 F.3d 434. 445 (6th Cir. 2008); *see* also *United States v. Saadey*, 393 F.3d 669, 676 (6th Cir. 2005).", (Campbell at 424).

The exact same Guideline under which Mr. Gordon agreed, was also the same that Campbell agreed:

> "Section 2E1.1 of the guidelines provides that the base offense level for RICO offenses 'is either 19 or "the offense level applicable to the underlying racketeering activity," which is greater.' *United States v. Tocco*, 200 F.3d 401, 428-29 (6th Cir. 2000) (quoting U.S.S.G. § 2E1.1). Conduct is 'underlying racketeering activity; under § 2E1.1 if it is 'relevant conduct' as defined in U.S.S.G. § 1B1.3(a)(1). *United States v. Tocco*, 306 F.3d 279, 286 (6th Cir. 2002).

> * * *

-10-

Here Campbell's presentence report recommended an offense level of 19, relying solely on the overt acts alleged against Campbell in the indictment. *See* PSR 6-7. The government objected, asserting that the drive-by shooting of Sherrick Jackson was 'underlying racketeering activity' attributable to Campbell, and therefor Campbell's offense level should be the offense level applicable to 'assault with intent to commit murder; * * * provides for a base offense level of 27 * * *

After hearing from the parties on the issue at sentencing, the district assigned Campbell an offense level of 27. The court has just assigned an offense level of 27 to Campbell's codefendant Terrance Machen based on the same guidelines for Machen's participation in a different gang shooting.", (Campbell at 425).

The above case mirrors Mr. Gordon's situation. The Sixth Circuit in Campbell detailed Campbell's other Overt Acts:

"described Campbell committing, alongside other LSP members, racketeering acts alleged in the indictment: narcotics trafficking at a dope house run by a leader of the enterprise, and the attempted murder of an individual feuding with LSP.", (Campbell at 424).

The significance of the above is the Sentencing Judge in Campbell included all of the Overt Acts resulting in a Base Offense Level 27, the precise level that Mr. Gordon accepted in his Plea Agreement.

To place the above in another perspective, the original level of 19 includes the Overt Acts. The increase to Base Offense Level 27 is simply the agreed upon enhancement of the primary underlying Racketeering Act.

To add the points as the Presentence Report improperly does in its grouping, is to double count, to create unconstitutional multiple punishment, and to go against past Sixth Circuit case law cited above.

-11-

It is thus requested, under the 3553(a) Factors, that This Honorable Court can apply the above factors as a basis to state Mr. Gordon's Base Offense Level is 27.

With respect to the need for the sentence to reflect the seriousness of the offense, it goes without saying that Mr. Gordon has pled guilty to a Base Offense Level 27, has accepted his responsibility, and recognizes that the Guidelines call for a sentence under that particular Guideline to be imposed.

With respect to the kind of sentence and the Sentencing Range established for the applicable category, again, Mr. Gordon refers to the above, as a basis for This Honorable Court to begin with the Base Offense Level established in the Plea Agreement.

Finally, with respect to the history and characteristics of the Defendant, as stated earlier in this Memorandum, Mr. Gordon has personally prepared a statement to be addressed at the time of his sentencing.  Candidly, this counsel has listened to it and consider it one of the best examples of a client's inner feelings he has ever heard.

The allocution statement to be given by Mr. Gordon speaks for itself, but attached as Exhibit 1, is a letter written by RaShawn Dickerson, I Licenses Chemical Dependency Counselor.

The letter highlights some of the character traits that this counsel has noticed in almost two years of working with Mr. Gordon.  There is no question Tysin has leadership qualities, is respected by his peers, and is a dedicated individual when he puts his efforts into something positive.

As a juvenile and as a young adult, he obviously made poor decisions, and, as a result, he recognizes his responsibility in this case.

-12-

In that recognition, it should be noted he signed a Plea Agreement back on October 26, 2015. It goes without saying that he saved the Government and This Court a significant amount of time and expense, opting long ago to forgo the trial set for July 11, 2016.

Finally, he has an extraordinary relationship with his mother and with his children. When this counsel meets with him, he talks often of his family and in many contacts with his mother speaks of how he is the most important person in her life.

In conclusion, it is respectfully asserted that the final sentence implemented, include Acceptance of Responsibility, with a Base Offense Level of 24 and a Criminal History IV.

Respectfully submitted,

     /s/David J. Graeff
David J. Graeff  #0020647
P.O. Box 1948
Westerville, Ohio  43086
Phone:  (614) 226-5991
Trial Counsel for Defendant
Tysin Gordon

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was delivered to David DeVillers, Kevin Kelley, and Brian Martinez, Assistant United States Attorneys, 303 Marconi Boulevard, Suite 200, Columbus, Ohio 43215, this  12th  day of     June    , 2016.

     /s/David J. Graeff
David J. Graeff  #0020647
Trial Counsel for Defendant
Tysin Gordon

EXHIBIT 1

## ALVIS 180 DEGREE IMPACT

12/29/2015

RaShawn Dickerson
Alvis 180 Degree Impact
2100 Bryden Road Columbus Ohio 43205

**Your Honour,**

I am writing this letter of character on behalf of Mr. Tysin Gordon and I'm fully aware of the charges being bought against Mr. Gordon of conspiracy and racketeering. Mr. Gordon contacted me to write this reference to be presented at court during the time of his sentencing hearing.

I had the pleasure of working with Mr. Gordon closely in 2013 which he was involved in an intense EQUIP (Thinking for a Change) program. This program was very detailed in helping individuals identify their social deficiencies, social morals, and social skills. Mr. Gordon exceled in each component of the three phases. He modeled pro-social behavior skills during his time in the program which reflected in his day to day living. This young man led peer discussion groups of crisis intervention among offenders. He volunteer in the community and was able to build pro-social relationships with peers and other positive supports he encountered. Mr. Gordon help with building a playground for the inner-city youth with the Harmony Project and planting new trees in the community park in Southeast Columbus. He was also very positive with the peers he interacted with during the program and encouraging them to strive for success. This gentleman had grown into a leader and was a very respectable young man.

After highlighting some of Mr. Tysin Gordon's attributes I can honestly say that this offense was totally out of his character and this young man has so much more to offer to not only himself but to others around him. In my opinion Mr. Gordon is a very talent person with some great leadership skills that could be transferable to make a difference in others' lives. He is a dedicated person when he puts the effort into something and I know he will do some positive things after this minor setback is resolve in his life. I know he will apply the lessons learned from this situation and transfer them into a teachable moment and better his self as a man. Feel free to contact me if needed to verify the content of this statement 614 252 0660 ext. 562

RaShawn Dickerson
Licensed Chemical Dependency Counselor II
Alvis 180 Degree Impact